IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SONIA AND ELY TANGONAN,

    Plaintiffs,

  v.

WELLS FARGO BANK N.A. *et al.*,

    Defendants.

No. C 17-02707 WHA

**ORDER DISMISSING ACTION**

## INTRODUCTION

In this wrongful foreclosure action, bank defendant moves to dismiss all claims asserted against it. Plaintiffs move to amend their complaint to add a new party. For the reasons stated herein, defendant's motion is **GRANTED**. Plaintiffs' motion is **DENIED**.

## STATEMENT

Plaintiffs Sonia and Ely Tangonan obtained a $320,000 home loan from defendant Wells Fargo Bank N.A.'s predecessor-in-interest, Worlds Savings Bank, FSB in 2003. The loan was secured by a deed of trust recorded against their house in Daly City (Compl. ¶¶ 1–6).

In 2009, plaintiffs ceased making payments on the loan. In October 2010, Wells Fargo recorded a notice of default on the loan showing a loan arrearage of $25,574.19. Plaintiffs, however, filed for chapter 13 bankruptcy, and Wells Fargo halted foreclosure proceedings until 2016 when the bankruptcy court lifted the stay on foreclosure. In December 2016, Wells Fargo

filed a second notice of default, which showed that plaintiffs then owed $168,711.30 in delinquent payments on their loan (Dkt. No. 9-1 at 41).

In March 2017, plaintiffs commenced this action, pro se, in the Superior Court of the Sate of California for the County of San Mateo alleging nine claims: (1) violation of California Commercial Code Section 3301, (2) violation of California Business and Professions Code Section 17200, (3) breach of the covenant of good faith and fair dealing, (4) negligent misrepresentation, (5) intentional misrepresentation, (6) injunctive relief, (7) declaratory relief, (8) quiet title, and (9) cancellation of instruments. Defendants removed the action on the basis of diversity jurisdiction. Defendant Wells Fargo then moved to dismiss (Dkt. No. 8). In response, plaintiffs filed an opposition (Dkt. No. 17) and a motion to remand (Dkt. No. 19). Plaintiffs also filed a motion for leave to amend their complaint to add defendant BSI Financial Services, attaching a proposed amended complaint that is in all ways identical to their original complaint except that it adds BSI Financial as a defendant (Dkt. No. 22).

A hearing was held on July 13, at which time Attorney Jonathan Matthews appeared on behalf of our previously pro se plaintiffs (Dkt. No. 28). At that hearing, he informed the judge of a parallel bankruptcy proceeding, initiated by plaintiffs in 2017, which was pending before Judge Hannah Blumenstiel. The undersigned judge issued an order that same day denying plaintiffs' motion to remand on the grounds that the sole non-diverse defendant was fraudulently joined, and otherwise staying the action pending the outcome of the bankruptcy proceeding (Dkt. No. 27).

On September 8, Judge Blumenstiel dismissed plaintiffs' claims against Wells Fargo finding their claims for injunctive and declaratory relief moot as the foreclosure sale had already taken place (Dkt. Nos. 33-1 at 15–16, 36-1 at 2–3). Judge Blumenstiel abstained from ruling on the state law theories put forth by plaintiffs in an attempt to set aside the foreclosure, noting that those theories were encompassed in the action currently pending before the undersigned judge (Dkt. Nos. 33-1 at 16–17, 36-1 at 2–3). On October 4, Judge Blumenstiel

dismissed the balance of plaintiffs' claims against other defendants in the bankruptcy proceeding for lack of proper service and lack of prosecution (Dkt. No. 36-1 at 6).[1]

The parties informed the undersigned judge of the status of the bankruptcy proceeding on October 31, and on November 3 an order lifted the stay and set a hearing on plaintiffs' fully-briefed motion to dismiss. This order follows full briefing and oral argument.

## ANALYSIS

**1. JUDICIAL NOTICE.**

Defendants seek judicial notice of eight documents, including: (1) the Certificate of Corporate Existence of World Savings Bank, FSB filed with the Office of Thrift Supervision, (2) a letter filed with the Office of Thrift Supervision certifying World Savings Bank's name change to Wachovia Mortgage, FSB, (3) the Corporate Charter of Wachovia Mortgage, FSB, (4) Certification of the Comptroller of Currency of the merger of Wachovia Mortgage, FSB with Wells Fargo Bank, Southwest, N.A., (5) an FDIC profile of World Savings Bank, FSB, from FDIC's official website reflecting its transition to Wells Fargo Bank, N.A., (6) a deed of trust recorded in the official records of the San Francisco Recorder's Office on December 11, 2003 as Loan No. 23304389, (7) a notice of default dated October 26, 2010, recorded in the official records of the San Mateo County Recorder's Office as Document No. 2010-126801, and (8) a notice of default dated December 7, 2016 recorded in the official records of the San Mateo County Recorder's Office as Document No. 2016-129948.

Each of these documents is a public record issued by a governmental agency, the authenticity of which is capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. *See Wolf v. Wells Fargo Bank, N.A.*, No. C 11-01337 WHA, 2011 WL 4831208, at *2 (N.D. Cal. Oct. 12, 2011). Therefore, defendants' motion for judicial notice is **GRANTED**.

---

[1] The complaint in this action seeks both to enjoin an impending foreclosure sale *and* to set aside a foreclosure. The foreclosure sale already occurred in June 2017 (Dkt. No. 33-1 at 4), and therefore claims seeking to enjoin the not-yet-completed sale are **DENIED AS MOOT**.

3

2. **MOTION TO DISMISS.**

To survive a motion to dismiss, plaintiffs' complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the party asserting it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Id.* at 681.

Plaintiffs' complaint makes several "factual" allegations, which ostensibly support each of their legal claims. These allegations include that Wells Fargo allegedly (1) securitized plaintiffs' loan, (2) hired fake bidders to appear at the auction for their property, (3) failed to provide plaintiffs with a qualified written response to inquiries regarding the note and balance of their loan, and (4) committed technical flaws in the mechanics of the foreclosure process. Each is addressed below.

Before addressing these points, however, this order addresses a critical matter raised by Wells Fargo — whether plaintiffs have tendered payment of their loan arrearage.

### A. No Tender.

Plaintiffs seek various forms of equitable relief including an order enjoining the foreclosure (Compl. ¶¶ 51, 63–75), a rescission of the loan contract and cancellation of foreclosure notice (*id.* ¶¶ 122–125), and an order quieting title (*id.* ¶¶ 126–142). Each of these forms of relief requires plaintiffs to have made a valid tender of their total outstanding debt. *See Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 551 (9th Cir. 2016); *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011). "A valid and viable offer of tender means that it is made in good faith, the party making the tender has the ability to perform, and the tender [was] unconditional." *Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969, at *1 (N.D. Cal. July 16, 2009) (Judge Saundra Armstrong) (citing Miller & Starr, *California Real Estate*, §§ 1439–1495 (3d ed. 1989)). This requirement prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the

4

challenge has not established his ability to purchase the property." *Williams v. Countrywide Home Loans*, No. 99–242, 1999 U.S. Dist. LEXIS 14550, *5–6 (N.D.Cal. Sept. 15, 1999) (Judge Samuel Conti) (citing *United States Cold Storage v. Great Western Sav. & Loan Ass'n,* 165 Cal. App. 3d 1214, 1225 (1985)).

Defendants argue that plaintiffs have failed to meet the tender requirement, and their claims for equitable relief should therefore be dismissed on that basis. The complaint alleges that plaintiffs were "able and willing to tender the amount owed" but that defendants "refused and failed to accept plaintiff's payments, and further refused to provide an accounting or supported invoices for each bill that defendants sent to plaintiff which . . . prevented plaintiff from tendering the note" (*e.g.*, Compl. ¶¶ 37, 60). This artful pleading does not satisfy the tender requirement, which mandates unconditional tender of the full amount owed. *See Alicea*, 2009 WL 2136969, at *1. Here, plaintiffs equivocate that they were willing and able to tender, but would do so only upon receipt of certain documents including "an accounting or supported invoices for each bill that defendants sent to plaintiff" (Compl. at ¶ 37). Their conditional offer does not satisfy the tender requirement.

Nor is their allegation that defendants refused to accept plaintiffs' payments — without specifying the amount of the payments plaintiffs allegedly offered to make — compelling. As stated, equitable relief from a foreclosure requires tender of the full amount owed. Merely stating that a lender failed to accept payments is not the same as alleging that it failed to accept the required payment of the *full amount.* If plaintiffs were in fact able and willing to tender, they could have simply done so. The notice of default stated the amount owed, $168,711 in December 2016, and provided contact information for the location at which plaintiffs could arrange to make payments (Dkt. No. 9-1 at 39–40). Their failure to unconditionally tender the amount owed is fatal to their equitable claims. Indeed, at the hearing on this matter, plaintiffs conceded that they did not offer to pay the full amount of their debt, and instead attempted to negotiate lower payments. This is insufficient. Accordingly, plaintiffs' quiet title claim, and claims for injunctive and declaratory relief fail as a matter of law.

Plaintiffs claims also fail for the reasons set forth below.

5

### B. Securitization Issue.

Many of plaintiffs claims are premised upon the notion that Wells Fargo, at some unspecified point in time, securitized their loan, and therefore lacks standing to foreclose. As an initial matter, this allegation is pled in an entirely conclusory manner. Plaintiffs merely state that "defendants securitized plaintiff's promissory note, which by law gave up all rights" (Compl. ¶ 30). This is a legal conclusion, and not the type of factual recitation required to state a claim under FRCP 8.

Even if this bare allegation was sufficient, however, it is not, standing alone, a legally viable basis for challenging a foreclosure. A party does not lose its power of sale merely because the original promissory note was assigned to a trust pool. *Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009). Plaintiffs do not dispute that Wells Fargo was the beneficiary of the loan at the time of foreclosure. Therefore, even if Wells Fargo had securitized the note, they would retain their power of foreclosure absent some other extenuating circumstance.

Moreover, as Wells Fargo observes, judicially noticeable loan documents show that the loan plaintiffs obtained in 2003 was never securitized but was merely transferred to Wells Fargo via merger with its predecessor World Savings Bank (*see* Dkt. No. 9-1 at Exhs. G, H and F). In light of these documents, this order does not credit plaintiffs' unsupported allegations that their loan was securitized, *see Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and their securitization claims fails for this reason too.

### C. Fake Bidders Allegations.

Plaintiffs further premise a number of their claims upon allegations that defendants hired fake bidders who planned to attend the foreclosure auction and bid on plaintiffs' property (Compl. ¶¶ 12, 24, 28, 84). Plaintiffs do not, however, explain how this fake-bidders plot allegedly harmed them. Moreover, the fake-bidders allegation is subject to the pleading requirements of FRCP 9(b) because it alleges fraudulent conduct, and therefore must be pled with particularity — *i.e.* allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The fake-

bidders allegations do not come close to satisfying this standard. Plaintiffs do not specify who hired the bidders (naming only "defendants" generally), who the bidders are, how the fake bidders were selected, how information regarding the actual foreclosure sale was suppressed, or any other details regarding this supposed fake auction. This is simply insufficient to support a legal claim.

### D. Qualified Written Response.

Plaintiffs further allege that they "sent a qualified written request (certified letter) under Real Estate Settlement Procedures Act" but did not receive a qualified written response from defendants (Compl. ¶¶ 16, 56). Under Section 2605(e) of Title 12 of the United States Code, a loan servicer has a duty to respond to a borrower's written inquiries regarding their loan. Failure to comply with this technical requirement, however, is only actionable under certain circumstances, and as described below, cannot form the basis for a claim here. *See Medina v. EMC Mortg. Corp.*, No. 09-04830 CW, 2010 WL 2573006, at *3 (N.D. Cal. June 24, 2010) (Chief Judge Claudia Wilken).

As an initial matter, plaintiffs do not specify who they requested the qualified written response from, naming only "defendants." This is a critical omission because the qualified written response requirement applies only to the loan servicer, not the loan originator. *See* 12 U.S.C. 2605(e). Therefore, the claim is deficient in this respect.

Plaintiffs' qualified written response claim also fails, however, because they have not alleged any "actual loss" as the result of defendants' alleged failure to provide a qualified written response — a prerequisite for stating a claim under Section 2605. 12 U.S.C. 2605(f); *see, e.g.*, *Reynoso v. Paul Fin., LLC*, Case No. 09-3225 SC, 2009 WL 3833298, at *7 (N.D. Cal. Nov. 16, 2009) (Judge Samuel Conti) (pecuniary loss is a requirement to plead a claim based upon a failure to provide a qualified written response). Accordingly, the alleged failure to provide a qualified written response to plaintiffs' request is not actionable.

### E. Other Alleged Technical Deficiencies In The Foreclosure Process.

Plaintiffs further contend that (1) defendants failed to inform them that a notice of default or trustee sale had been recorded (though they nevertheless discovered the notices had been recorded months in advance of the sale) (Compl. ¶¶ 23, 25–26), and (2) that "a fictitious unauthorized signer" signed defendants' notices of default and trustee sale (*id.* ¶ 34). These allegations, however, point to technical defects in the foreclosure process, which are not actionable unless they result in actual prejudice. *Davenport v. Litton Loan Servicing*, *LP*, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010) (Judge Richard Seeborg).

Here, plaintiffs knew of the default far in advance of any sale, and were in touch with Wells Fargo throughout 2016 regarding their loan (Compl. ¶ 22). Moreover, the notice of default was recorded with the San Mateo Recorder's Office more than six months before the sale (Dkt. No. 9-1 at 45), and a prior notice of default had been recorded over seven years ago (Dkt. No. 9-1 at 41). Plaintiffs do not plead that they were unaware of the notice of default, nor that the allegedly "unauthorized" signatory of that notice caused them any harm. Therefore, these alleged technical deficiencies cannot support their claims.

Additionally, plaintiffs allege that Wells Fargo was not in possession of the original promissory note (Compl. ¶ 32). Possession of the original note, however, is not required to initiate foreclosure, and therefore this allegation likewise fails as a matter of law. *See, e.g., Kolbe v. JP Morgan Chase Bank*, *N.A.* Case No. 11-10532 SI, 2011 4965065 (N.D. Cal. Oct. 13, 2011) (Judge Susan Illston); *Javaheri v. JP Morgan Chase Bank*, Case No. 10-08185, 2011 WL 1131518 at *2 (C.D. Cal. March 24, 2011) (Judge Otis Wright) ("[C]ourts have uniformly found that physical possession of the original promissory note is not a prerequisite to initiating foreclosure proceedings.") (citations and quotations omitted).

For the foregoing reasons, the alleged technical deficiencies in the foreclosure process cannot support plaintiffs' claims.

### F. Section 17200 Claim.

Plaintiffs' Section 17200 claim first alleges that Wells Fargo's predecessor acted unfairly and fraudulently by implying that their loan would be "a fixed rate loan, when it was

8

really an adjustable rate loan" (Compl. ¶ 45). It is undisputed, however, that World Savings Bank made this loan (and these alleged representations) in 2003, almost fifteen years ago. Section 17200 violations carry a four-year limitations period. Cal. Bus. & Prof. Code § 17208. Accordingly, the statute of limitation has run, and plaintiffs are barred from pursuing this claim.

Plaintiffs also allege that defendants violated Section 17200 due to the securitization of the loan, defendants' use of fake bidders, and technical deficiencies in the foreclosure documents described above. For the reasons set forth above, these claims fail as a matter of law, and therefore cannot support plaintiffs' Section 17200 claim. Accordingly, plaintiffs' Section 17200 claim is **DISMISSED**.

### G. California Commercial Code Section 3301 Claim.

Plaintiffs further allege that defendants violated California Commercial Code Section 3301, which addresses who is entitled to enforce a negotiable instrument. This claim fails because Section 3301 of the *Commercial* Code does not apply to non-judicial foreclosures. *Debrunner v. Deutsche Bank Nat. Tr. Co.,* 204 Cal. App. 4th 433, 440 (2012). Rather, "[t]he comprehensive statutory framework established [in the California *Civil* Code] to govern non-judicial foreclosure sales [was] intended to be exhaustive." *Ibid*. (citations and quotations omitted). Therefore, plaintiffs' claim for violation of Section 3301 must be **DISMISSED**.

### H. Implied Covenant of Good Faith And Fair Dealing Claim.

Plaintiffs' claim for breach of the implied covenant is predicated on theories of technical deficiencies in the foreclosure and recordation process already addressed above, and fails for the reasons stated therein.

Additionally, plaintiffs' complaint fails to identify a specific contractual provisions that Wells Fargo allegedly frustrated. The complaint is simply too vague to sustain a claim for breach of the implied covenant, and on this basis too, the implied covenant claim fails.

Finally, a claim for breach of the implied covenant of good faith and fair dealing requires a showing that the plaintiff substantially performed under the contract. *Marks v.*

9

*Chicoine*, No. C 06-06806 SI, 2007 WL 160992, at *6 (N.D. Cal. Jan. 18, 2007) (Judge Susan Illston). Here, it is not in dispute that plaintiffs failed to perform their part of the contract (*i.e.* pay their loan) for long stretches of time between 2009 and the present. Therefore, their claim for breach of the implied covenant must be **DISMISSED**.

### I. Quiet Title Claim.

Plaintiffs next allege that title should be quieted in their favor because of various technical deficiencies that allegedly occurred in the foreclosure and recordation processes (Compl. ¶¶ 126–142). These allegations fail for the reasons set forth above.

Plaintiffs further allege that Wells Fargo "has no right, title, estate, lien or interest in the property or any part of it," but this conclusory allegation is contradicted by judicially noticeable documents showing Wells Fargo's interest in the property as the lender (*see* Dkt. No. 9-1 at Exhs. G, H and F). Plaintiffs bald legal conclusion that they own the property in fee simple is not sufficient to sustain a quiet title claim. Accordingly, their quiet title claim is **DISMISSED**.

### J. Fraud Claims.

The claims for negligent and intentional misrepresentation likewise fail. Plaintiffs do not meet the heightened pleading standard required to state a fraud claim. Rather, these claims simply allege that defendants misrepresented that they were the owners of the deed of trust and holders of the promissory note. The complaint provides no further detail. Such vague and conclusory statements do not meet the heightened pleading standard of FRCP 9(b). *See Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 549 (9th Cir. 1989).

Plaintiffs also reallege the claim that defendants hired fake bidders to attend a fake auction, but fail to give any details regarding the fake bidders or fake auction. This claim is addressed above, and likewise fails. Plaintiffs' fraud claims are **DISMISSED**.

### K. Cancellation of Instruments Claim.

As with many of their claims, plaintiffs' cancellation of instrument claim is premised on the theories that there were technical deficiencies in the recording of the notice of default and notice of sale, and that defendants do not hold the actual note. As stated above, plaintiffs have failed to show how any of these alleged deficiencies actually harmed them, and defendants'

10

need not show physical possession of the note to effect a foreclosure. Accordingly, plaintiffs' cancellation of instruments claim must be **DISMISSED**.

### 3. MOTION TO AMEND.

Plaintiffs' proposed amended complaint, which differs only in that it adds BSI Financial Services as a defendant, suffers from all of the same deficiencies noted above. Therefore, permitting plaintiffs' proposed amendment would be futile and is not warranted under FRCP 15.

### CONCLUSION

Defendants' motion to dismiss is **GRANTED** as to all claims **WITHOUT LEAVE TO AMEND** as any amendment would be futile. The Clerk **SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: November 30, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE